## ARIMOND VS. GREEN BAY & MISSISSIPPI CANAL COMPANY.

| 35 | 41 |
| 76 | 283 |

| 35 | 41 |
| 93 | 548 |

| 35 | 41 |
| 59 LRA 906n | |

MILL DAMS. (1) *No defense to action for flowage of lands, that defendant's dam and another caused flowage.* (2) *Mill-dam act strictly construed.* (3) *Dam to improve navigation, not a mill-dam.* (4) *Act of legislature construed.*

EASEMENT. (5) *Prescriptive right to flow land rests on twenty years' user.* (6) *Former decision reaffirmed.*

1. In an action for the flowage of plaintiff's land, alleged to be caused by the erection and maintenance of defendant's dam across one branch of the outlet of lake Winnebago, so as to raise the waters of the lake, the answer alleged that *another* dam, two feet higher than that of the defendant, had been subsequently erected across the *other* branch of said outlet; that the two dams were erected and maintained by different parties, acting separately; and that *both dams, acting together*, set back the water on plaintiff's land, and neither would have done it separately. *Held*, that these facts constitute no defense.

2. Ch. 184, Laws of 1862, applies in terms only to " mill dams," and must be strictly construed.

3. It appearing from the answer that the dam here in question is maintained by the defendant company as an " integral part " of its works constructed to improve the navigation of the Fox river, the facts that it was originally erected, by defendant's assignors, as a mill dam, and that the power created by it is still employed to propel flouring or lumber mills, do not make it a " mill dam " within the meaning of the act of 1862.

4. The act of the territorial legislature authorizing certain persons to construct a dam across the northern outlet of lake Winnebago (Terr. Laws of 1848, p. 129), did not empower them to erect a dam which should raise the waters of said lake above their natural level.

5. A plea of prescription for an easement to flow lands must show an adverse user for *twenty* years, and not for *ten* years only: and this rule applies where such flowage is caused by the maintenance of a dam across a navigable stream to improve the navigation thereof, under a grant of power from the legislature.

6. The doctrines held on a former appeal in this cause (31 Wis., 316), reaffirmed.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action to recover damages for the flowage of plaintiff's land, alleged to have been caused by the erection and maintenance of defendant's dam across the north channel of the outlet of Lake Winnebago. After an order sustaining a demurrer to defendant's amended answer had been affirmed by this court, on appeal (31 Wis., 316), the case was remitted to the circuit court, where defendant again amended its answer, and plaintiff demurred to the second, fourth, fifth and sixth defenses set up in the answer as so amended. The second defense was, that a certain other dam similar to that of defendant, and two feet higher, had been, by other parties acting independently of defendant, erected subsequent to the erection of defendant's dam, and ever since maintained, across the south channel of the outlet of said lake; that the two dams together caused the flowage, and that neither of them would have caused it separately. For a fourth defense it was alleged that by an act of the territorial legislature of March 10, 1848, Curtis Reed and his associates were authorized to erect the dam in question, which they began doing; that under and by a subsequent act of the then state of Wisconsin, August 8, 1848, entitled "an act to provide for the improvement of the Fox and Wisconsin rivers and connecting the same by canal," a board of public works of five persons was organized, which board completed the dam by agreement with Reed and his associates, who released all their right, title and interest therein to the Fox and Wisconsin River Improvement Company; that the dam was completed to its present height more than ten years prior to the commencement of this action; that defendant is duly incorporated, and became duly seized by conveyance of the Fox and Wisconsin River Improvement, including the dam, by title from Reed and his associates and the state, through the Fox and Wisconsin River Improvement Company; that "said dam was and is a mill dam and also an integral part of said works of improvement," and defendant and its grantors had been in adverse possession of plaintiff's land by flowing the same for more

than ten years before this suit. The fifth defense was, that the dam, ever since its construction, had been and was a mill dam, and also a part of the Fox and Wisconsin River Improvement; that it was built in part for the purpose of being used as a mill dam in connection with water grist and flouring mills, and water lumber mills, in the performance of custom work; and that immediately after its erection such mills were built in great number, and had ever since been operated by means of said dam. The sixth defense contained the same allegations as the second, with regard to the injury being caused by the erection of another dam, and also alleged, among other things, that the Fox and Wisconsin were navigable rivers and public highways, and that the dam was maintained as a part of the works of improvement of their navigability.

Plaintiff's demurrer to these defenses was sustained; and defendant appealed from the order.

*Sloan, Stevens & Morris*, for appellant, contended that the injury to plaintiff's land resulted wholly from the erection of the second dam, since defendant's dam had produced no such result. It follows that those who erected the dam subsequently built, are liable to plaintiff for the injury which resulted directly from their acts. This question is virtually decided in *Lull vs. Fox and Wisconsin Imp. Co.*, 19 Wis., 106, where the question of this joint liability was involved. Upon the fourth defense, counsel contended that defendant was in adverse possession of the easement of flowage, under a claim of right founded upon a written instrument, the act of the legislature of 1853 conveying the works of improvement on the Fox and Wisconsin rivers to the "Fox and Wisconsin Improvement Company," defendant's grantors, being a written instrument within the meaning of the term as used in the statute defining adverse possession. The question then is, whether, defendant having been in the adverse possession and enjoyment of plaintiff's land by flowage for ten years prior to this action, under a claim of right founded on a written instrument, the action is barred by the

statute of limitations? It is the settled law of this country, that the same time which is required by the local statute to bar an action of ejectment for land held adversely, will bar an action for damages in case of the use and enjoyment of an easement. Washburn on Easements, p. 70, and cases there cited. There seems to be no exception to the rule that in each state the time to perfect a prescriptive right is the same as the statutory limitation for gaining title to land. We do not understand that this question was decided when the case was before the court. By some mistake, the court supposed this defense waived. They say: "The third defense, setting up that the action did not accrue within ten years next before suit brought, is waived in the brief of counsel for defendants," and yet, in the synopsis of the brief as reported, this point is made, but it is evident that the court did not decide it. The remarks near the close of the opinion are to be regarded as *obiter*.

*Gillet & Taylor*, for respondent, to the point raised by the second defense, viz., that defendant and some one else caused the damage, contended that this constituted no defense to the action, citing *Wheeler v. City of Worcester*, 10 Allen, 591; *Lull v. Fox & Wis. Imp. Co.*, 19 Wis., 100. As to whether the ten years limitation will protect defendant in maintaining this dam, the question, so far as concerns this case, is *res adjudicata*. All the facts necessary to raise the question were in the former answer, and this court adjudged that it was not a mill dam within the meaning of the act of 1862. Independent of the fact that this point has been once decided, it is clear that a dam which is built and maintained as a part of the improvement of Fox River, under the laws of the state, is not a mill dam within the meaning of the statute, and defendant has no right to maintain a mill dam under its charter.

COLE, J. In the second defense it is in substance alleged, that another dam, similar to the defendant's dam, was erected across the south channel of the outlet of Lake Winnebago, and

that such dam was erected subsequently to and is at least two feet higher than its dam. It is averred that the two dams were erected and are maintained by different parties acting separately. It is then alleged "that said two dams operating together set back the waters upon" and injured the plaintiff's land. In other words, the defense set up in this part of the answer is, that the injury of which the plaintiff complains is produced by the joint action of both dams. That is the substance of, and only possible construction to be placed upon, this defense. And it seems to us that it requires no argument to show that it is bad. We adopt the language used by the supreme court of Massachusetts in *Wheeler v. The City of Worcester*, 10 Allen, 591–601, as a sufficient answer to this defense: "If the injury is produced by the joint action of several parties, and especially, if it is the result of the independent action of several parties contributing thereto, though not in combination or by concert, it is no defense that all are not made defendants; for when the injury does not arise from privity of contract, but is a mere misfeasance, misjoinder of defendants cannot be availed of to defeat the action." In *Lull v. The Fox & Wis. Imp. Co.*, 19 Wis., 100, the party whose land was flowed brought his action for damages against defendants who maintained different dams. It was held that each defendant was only liable for the injury occasioned by his own dam, and that several causes of action were improperly joined. But that case affords no support to the position that when the damage is caused by the defendant and some other party by a joint action, as when "the two dams operating together" flow the land, the one whose property is injured has no remedy.

In the fourth defense, as we understand it, the ten years statute of limitation is relied on as a bar to the action. And first in regard to the question arising under the law of 1862 (ch. 184). That statute in terms applies to mill dams in the proper and strict sense of the words. The dam of the defendant is not such a dam, notwithstanding the matters stated in

this part of the answer.    The act of 1862 is therefore inapplicable, and such was the distinct intimation when this cause was here on the former appeal.    31 Wis., 316–339.    It appears from this defense that the dam in question was built by Reed and associates under the charter granted in 1848.    This, it is claimed, was ample legislative authority for the erection of the dam in the first instance; and as the defendant company has succeeded to all the rights and franchises of Reed and associates in the manner set forth in this defense, it is protected in maintaining the structure.    It may be conceded that the dam which the charter of 1848 authorized Reed and associates to build might be a mill dam, but no authority was given to erect a dam which should raise the water in Lake Winnebago above its ordinary level.    As a matter of course, then, this law gave no right to any one to flow the plaintiff's land.    It is alleged that the dam built by Reed " was and is a mill dam, and also an integral part of " the work of the Fox and Wisconsin Improvement Company.    Now so far as the dam " became and is " an integral part of the work of the improvement company, its character as a mill dam was lost.    For its primary and real object then was, not to furnish a water power for ordinary mills, but to improve the navigation of Fox River.    And it seems to us very obvious that a dam built for the purpose of improving the navigation of a river is not a mill dam within the meaning of the law of 1862.    And it is quite unimportant that the power which is created by the dam is used to propel mills. This does not change the character of the structure, and convert a dam intended to improve a navigable river into a mill dam within the statutory sense.    And by the transfer of Reed and associates, the improvement company has no other or greater right to keep up and maintain the dam than it has to maintain any other dam constructed for the improvement of the navigation of the rivers.

Another defense set up in this part of the answer is, that the defendant company has been in the adverse possession of the

Arimond vs. Green Bay & Mississippi Canal Company.

easement of flowage which encumbers the plaintiff's land, under a claim of title founded upon a written instrument, for ten years, and the action is therefore barred under section 6, ch. 138, R. S.  The former opinion of the chief justice contains a sufficient answer to this position.  It is suggested on the brief of counsel for the defendant that what is said by him on this question is *obiter*.  We did not then and do not now so regard those remarks.  They were designed to meet and decide the precise point here presented.

The matters set up in the fifth defense to show that the dam in question was a mill dam, and had been maintained for more than ten years so as to bring it within the statutory bar of the act of 1862, have already been noticed.  It is averred that the dam, ever since it was built, has been a mill dam, and is also an essential, necessary and integral part or portion of said works of improvement, and necessary to the improvement of the navigability of said Fox and Wisconsin Rivers and to the proper development and enlargement of their capacity as common navigable highways.  This shows the character of the dam, and that it is in fact a part of the work or system of improvement, and is not properly a mill dam, notwithstanding it may be used, or the power created by it, in connection with water grist or flouring mills and lumber mills for doing custom work.

The questions raised by the sixth defense have either already been anticipated in considering the other parts of the answer, or were decided adversely to the defendant on the former appeal.  There would seem to be no necessity for going over the same discussion.  See *Pumpelly v. Green Bay Company*, 13 Wallace, 166.

*By the Court.* — The order of the circuit court, sustaining the demurrer to the second, fourth, fifth and sixth defenses, is affirmed.

A motion for a rehearing was denied.