Priewe vs. Wisconsin State Land & Improvement Co.

PRIEWE, Appellant, vs. WISCONSIN STATE LAND & IMPROVEMENT COMPANY, Respondent.

*May 25 — June 19, 1896.*

*Waters: Lowering of lake by drainage: Riparian rights: Constitutional law: Police power.*

1. A riparian proprietor on Muskego Lake, along whose shore line a strip of land was uncovered by the lowering of the waters of the lake by means of a system of artificial drainage pursuant to ch.

Priewe vs. Wisconsin State Land & Improvement Co.

169, Laws of 1887, and who acquiesced in the proceedings and paid an assessment against him for benefits derived from said drainage, did not thereby lose his riparian rights but continued to have free access to the lake in front of his premises.

2. The state cannot arbitrarily take away or destroy the rights of a riparian owner on a navigable lake, without his consent, and without compensation, and without due process of law, for the sole purpose of benefiting some other riparian owner, or for any other mere private purpose.

3. Ch. 202, Laws of 1891 (attempting to convey and relinquish to one R., his heirs and assigns, all the right, title, and interest of the state in and to the land within the limits of Muskego Lake as they existed prior to the lowering of said lake pursuant to ch. 169, Laws of 1887, and authorizing and requiring said R. to lower the lake still further by extending and completing the system of drainage commenced under said act of 1887), is *held* to have been intended solely to secure speculative advantage and pecuniary gain to private parties; and it could not, therefore, operate to defeat or impair the previously acquired rights of riparian owners on said lake.

4. The recital in said ch. 202, Laws of 1891, that the preservation of the public health and the well being of the communities adjacent to said lake imperatively require the extension and completion of the system of drainage commenced under ch. 169, Laws of 1887, is not conclusive upon the courts.

5. The legislature has no power, under the guise of legislating for the public health, to authorize the destruction of a lake, and thereby create a nuisance, to the great injury of a riparian owner, for private purposes and for the sole benefit of private parties.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

The complaint alleges, in effect, that Muskego Lake is situated within the boundaries of Waukesha county and is a natural body of water, and up to 1891 was about four and one-half miles long and one and one-half miles wide (its greatest length being from north to south), and from one to ten feet deep; that the lake was regularly surveyed and meandered by the United States prior to the admission of this state into the Union, and covered about 3,500 acres of land; that long prior to 1891 the United States patented to

settlers and purchasers the lands lying in, about, adjacent to, and bordering upon that lake, together with the riparian rights, water rights, privileges, and easements incident to, in connection with, and adjacent to said lake; that the lake, at all times prior to the acts complained of, abounded in fish and game in great quantities; that it was navigable for sail, steam, and row boats, and much used for business and pleasure; that upon the northerly side a large number of small creeks and living streams of water flowed into the lake, and the waters in the lake constantly moved towards the south; that at the southern end of the lake was an outlet, which emptied into Wind Lake, in Racine county; that ever since 1875 the plaintiff has been and is now the owner in fee simple and in the possession of sixty-six and one-half acres of land, described, adjacent to and upon the north side of Lake Muskego, and in contact with the waters thereof, having a natural frontage line upon that lake of about one hundred rods; that during that period he has been and now is engaged in the business of farming, stock-raising, and maintaining a club-house, lodging-house, and resort, with boats and hunting and fishing tackle, both for use and rent upon the waters of that lake; that the plaintiff had erected thereon houses, barns, stables, fences, and other improvements, situated near to and adjacent to the lake; that the lake, prior to the acts complained of, was a source of health, pleasure, and profit to the plaintiff and his guests and the public in general; that the plaintiff made great use of the waters of the lake, and of the riparian rights belonging to and forming a part of his premises, in connection with his farm, clubhouse, dwelling house, boarding house, etc.; that, prior to the acts complained of, his premises were worth $9,000.

The complaint then alleges that, since the earliest settlements in the vicinity, the bottom of the lake has generally, but erroneously, been supposed to be composed of a deep layer of decayed muck or vegetable matter, which would

become productive and of great value for agricultural purposes if the water could be drained therefrom; that to secure such drainage, and the title to and possession of 3,500 acres of the bed of the lake, many schemes have been at various times devised, and some work done towards carrying out the same; that, to effect such purpose, the Muskego Canal Company was incorporated by ch. 262, P. & L. Laws of 1854, with power and authority to construct and maintain a canal for the purpose of draining the waters of Muskego and Wind Lakes in the counties of Waukesha and Racine, into the Root river or its tributaries, and to connect the waters of adjoining lakes with the waters of those lakes, and to drain the same, thereby giving the incorporators the sole and exclusive right to do as therein authorized; that the power and authority so given was extended by ch. 498, P. & L. Laws of 1856, to January 1, 1858; that by ch. 198, P. & L. Laws of 1868, substantially the same powers, rights, privileges, and reservations as granted to the Muskego Canal Company were attempted to be given and granted to James Reynolds and others; that ch. 198, P. & L. Laws of 1868, was repealed by ch. 326, P. & L. Laws of 1869.

It is then alleged that ch. 169, Laws of 1887, entitled " An act to provide for the drainage and reclamation of certain lands in Racine and Waukesha counties," went into effect April 21, 1887, and provided, in effect, that whenever fifteen or more owners of wet or overflowed lands lying adjacent to any one or more of the lakes of Wind, Muskego, and Eagle shall be of the opinion that such lands will be benefited by the system of drainage and subject to the assessment therein provided, and who shall be of the opinion that the public health and welfare will be promoted thereby, shall desire to institute proceedings for the drainage and reclamation of lands in any such part of either of said counties, either by constructing, extending, opening, enlarging, widening, straightening, or deepening watercourses, or removing

natural or artificial obstructions therefrom, or by perma-
nently lowering the ordinary level of the water in any or
all of said lakes, they may apply to the circuit court, or the
judge thereof, by petition, for the institution of such pro-
ceedings and for the appointment of five commissioners, etc.,
giving to such commissioners certain powers, and prescribing
certain things to be done by them; that such proceedings
were commenced by the filing of a petition and the appoint-
ment of commissioners in October, 1887; that such com-
missioners were appointed for the purpose of lowering the
water in Muskego Lake four feet, and to widen and deepen
the river between Muskego and Wind Lakes; that during
1889 and 1890 such proceedings were had by said commis-
sioners that the plaintiff was assessed for benefits to be de-
rived from said system of drainage, including the lands which
this plaintiff was to acquire by means of draining the water
in said lake from his front line, which assessment the plaint-
iff paid; that during said years, by the system of drainage
thus adopted and carried out, the level of Muskego Lake
was lowered in 1890 about four and one-half feet below the
low-water mark; that the water in that lake receded from
its ordinary and usual level, as maintained January 1, 1888,
upward of two rods, and that the plaintiff acquired, by means
thereof, under such proceedings, upward of four acres, and
his line of lake frontage of his said lands was by said public
proceedings changed accordingly, for all of which he was
assessed and paid a valuable consideration; that the plaint-
iff thereupon laid out and expended large sums of money
upon his said lands in order to reasonably and profitably
enjoy and use the same for farming and resort purposes;
that the amount of profitable and remunerative business of
the plaintiff constantly increased until the acts herein com-
plained of; that the plaintiff paid such assessments, relying
upon the action of the commissioners and others under said
last-named act as being a final settlement of the question of

lowering the level of Muskego Lake; that the public health
and well-being of the communities adjacent to Muskego Lake
did not thereafter, and never have, required that the system
of drainage so adopted and carried out should be extended,
enlarged, and completed, so as to drain the bed and bottom
of said lake.

The complaint then alleges that ch. 202, Laws of 1891,
entitled "An act granting to James Reynolds, his heirs and
assigns, the right to complete the draining of certain swamp,
wet, and overflowed lands in the counties of Waukesha and
Racine and to confirm his title thereto," went into effect
April 13, 1891; that it recited certain provisions of said ch.
198, P. & L. Laws of 1868, and proceedings under said ch.
169, Laws of 1887, and contained, among others, the follow-
ing recital: "Whereas, the preservation of the public health
and the well being of the communities adjacent to said lakes
imperatively require that said system of drainage should be
extended, enlarged, and completed so as to effectually drain
such wet and overflowed lands;" that twelve days after the
publication of that act, and on April 25, 1891, James Rey-
nolds and wife, of Illinois, executed and delivered to the
defendant company a certain quitclaim deed, for the nom-
inal consideration of $299,700 in the shares of the capital
stock of the defendant at their par value, of all the lands
within the meander lines and boundaries of Muskego Lake
as they existed prior to January 1, 1888, and, further, by
said deed purported to grant and convey the lands within said
meander lines, and the overflowed lands adjacent thereto, as
also the lands within the meander lines of said Wind Lake;
that said deed was recorded June 26, 1891; that ever since
said conveyance the defendant has claimed to hold and to
have all the rights, privileges, benefits, and obligations
thereby attempted to have been granted and conveyed; that
in the summer of 1891 the defendant commenced the prose-
cution of said work and drainage for the sole and express

.purpose of draining the bed of the said lake and acquiring and possessing itself of the lands under the waters thereof; that in the prosecution of said work the defendant, from time to time, has been opening, extending, and deepening the ditches and drains in and about said lake, with the purpose and intent of withdrawing all of the water from said lake bed, and of confining the same within the ditches and canals constructed by it, so that the said lake shall be entirely destroyed; that the waters of the lake have already been lowered several feet from the level at which the same stood prior to June 26, 1891; that the same was done entirely without the consent or approval of the plaintiff; that by reason of the destruction of the plaintiff's water rights and privileges, so unlawfully and wrongfully done and performed by the defendant, the plaintiff has suffered and is suffering great and irreparable loss and damage, in the sum of $6,000; that the defendant now proposes and intends a still further drain of the lake to withdraw the waters therefrom, and intends to and will, unless restrained, completely drain said lake, to the plaintiff's great and irreparable loss and injury.

The complaint further alleges that the said public drainage proceedings under said last-named chapter are being subverted, from the alleged purpose to promote the public health and public weal, into a purely private and speculative purpose, and that that act is wholly unconstitutional and void, and all proceedings thereunder by the defendant are wholly unlawful; that the defendant is acting in violation and disregard of ch. 202, Laws of 1891, by its failure to give a bond as therein required; that the bed of Muskego Lake is composed largely of muck and vegetable matter, sand, and shells, and is full of springs, and is so soft where the water has been withdrawn that a pole can be thrust down from fifteen to thirty feet; that if the bed of the lake should be left exposed to the sun and rain, as a great bog or marsh, it would never be productive or useful for any purpose; but

would be a fruitful source of disease and malaria to all persons living in the vicinity thereof, and of great damage and injury to the property and home of the plaintiff; that he has already suffered considerable sickness in his family, and has been put to a considerable expense on account thereof, by reason of the prosecution of said work by the defendant, who is guilty of creating a great and continuing nuisance, from which the plaintiff is a direct sufferer; that the plaintiff has already suffered great loss and damage, to the amount of $10,000, for which he prays judgment, and for a perpetual injunction, and for general relief.

To such complaint the defendant demurred on the grounds that the court had no jurisdiction, that there is a defect of parties plaintiff, that several causes of action have been improperly united, and that it does not state facts sufficient to constitute a cause of action. The court sustained the demurrer upon the last ground stated, but overruled the same as to the other grounds mentioned. From that part of the order sustaining the demurrer the plaintiff appeals.

For the appellant there was a brief by *Orren T. Williams*, attorney, and *George L. Williams*, of counsel, and oral argument by *Orren T. Williams*. They argued, among other things, that the state cannot deprive a riparian owner of his rights as such except by a constitutional exercise of the power to appropriate property for public use. *Bowman's Devisees v. Wathen*, 2 McLean, 376, 382, 383. These rights are not a mere easement or appurtenance, but are inseparably connected with the soil itself. Gould, Waters, § 204; 2 Washb. Real Prop. (5th ed.), 367; *Kaukauna W. P. Co. v. G. B. & M. C. Co.* 75 Wis. 390. Riparian rights are incident to the soil adjacent to the water, not to the soil under the water; consequently where the proprietors own only to the water's edge they have the same right in this respect as where they own to the thread of the stream. Gould, Waters, § 246; 2 Hilliard, Real Prop. (3d ed.), 100; *Chapman v. O.*

*& M. R. R. Co.* 33 Wis. 629; *Yates v. Milwaukee,* 10 Wall. 504; *Ill. Cent. R. Co. v. Illinois,* 146 U. S. 445; *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 682. The plaintiff's riparian rights include the exclusive right of access to and from the lake in front of his land; of building there piers and wharves in aid of navigation, not interfering with the public use, and also the right to enjoy for purposes of gain or pleasure all the facilities which the location of his land with reference to the lake affords; to have the waters flow by his land without artificial obstruction. *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Diedrich v. N. W. U. R. Co.* id. 262; *Yates v. Milwaukee,* 10 Wall. 497; *Saunders v. N. Y. C. & H. R. R. Co.* 23 N. Y. Supp. 932. The plaintiff's property extended to the actual water line, and if the actual water line changed, the line of the plaintiff's land changed with it, and he acquired title to gradual additions to the land made either by alluvion or by the gradual recession of the waters. *Jones v. Johnston,* 18 How. 156; *Chicago & N. W. R. Co. v. Groh,* 85 Wis. 641; *Shively v. Bowlby,* 152 U. S. 35. The legislature cannot deprive the riparian owner of this land derived by accretion or reliction, after it is once acquired. *Warren v. Chambers,* 25 Ark. 120; *Murry v. Sermon,* 1 Hawks, 57; *Saunders v. N. Y. C. & H. R. R. Co.* 23 N. Y. Supp. 927; *Municipality No. 2 v. Orleans Cotton Press,* 18 La. 122, 213, 214. The state has no proprietary interest in submerged lands, but holds them as sovereign, in trust for the public, and cannot abdicate this trust, and no grant of such land for purely private purposes can operate to impair or defeat the previously acquired rights of the riparian owner. *McLennan v. Prentice,* 85 Wis. 444, 445; *Ill. Cent. R. Co. v. Illinois,* 146 U. S. 452–455; *Hardin v. Jordan,* 140 id. 371, and cases cited on 393 *et seq.; Cobb v. Davenport* 32 N. J. Law, 369; *Bradshaw v. Duluth Imp. M. Co.* 52 Minn. 59; *Stockton v. B. & N. Y. R. Co.* 32 Fed. Rep. 9, 19, 20. The beds of waters in which the titles of

riparian owners do not extend to the center, belong to the several states in which they are located, as sovereigns. *Barney v. Keokuk,* 94 U. S. 324, 338; *Pollard's Lessee v. Hagan,* 3 How. 212, 230; *Knight v. U. S. Land Asso.* 142 U. S. 183; *Den v. Jersey Co.* 15 How. 426, 432; *St. Clair Co. v. Lovingston,* 23 Wall. 68; *Shively v. Bowlby,* 152 U. S. 1; *Goodtitle v. Kibbe,* 9 How. 471; 3 Kent, Comm. 427; *J. S. Keator L. Co. v. St. Croix B. Corp.* 72 Wis. 89; *Gilman v. Philadelphia,* 3 Wall. 726. This title is a title by sovereignty, not a proprietary title. *Martin v. Waddell,* 16 Pet. 367, 408, 414; *Saunders v. N. Y. C. & H. R. R. Co.* 23 N. Y. Supp. 932. In grants by the United States of lands bounded on waters the boundaries will be construed to be at the water's edge, or elsewhere, according to the law of the state in which such lands lie. *Hardin v. Jordan,* 140 U. S. 371; *Packer v. Bird,* 137 id. 661, 669, 670; *St. Louis v. Rutz,* 138 id. 226, 242; *Barney v. Keokuk,* 94 id. 324, 338; *Ill. Cent. R. Co. v. Illinois,* 146 id. 435. The drainage authorized by ch. 202, Laws of 1891, is for a *private* purpose. The taking of lands is for a private use. Lewis, Em. Dom. §§ 163, 165. The question whether the use is a public one is a judicial one to be determined by the courts. *In re Niagara Falls & W. R. Co.* 108 N. Y. 375; *Citizens' W. W. Co. v. Parry,* 59 Hun, 202; *S. C.* 128 N. Y. 669.

*David S. Rose* and *A. W. Bell,* for the respondent, contended, *inter alia,* that at the time the drainage proceedings were instituted under ch. 169, Laws of 1887, the plaintiff, as a riparian owner, took only to the natural shore of the lake. *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Boorman v. Sunnuchs,* id. 233; *Diedrich v. N. W. U. R. Co.* id. 248. The lowering of the lake pursuant to that statute was accomplished through the artificial process of draining. The recession of the water was not gradual, nor imperceptible, nor natural. As a consequence the plaintiff never acquired title to the strip of the lake bed uncovered by the drainage

work. *Halsey v. McCormick*, 18 N. Y. 147; *Boorman v. Sunnuchs*, 42 Wis. 233. That strip is owned either by the state, the United States, or the defendant, and plaintiff cannot reach the waters of the lake without becoming a trespasser thereon. He is no longer a riparian owner, but simply an adjoining owner to the owner of the strip that lies between his lands and the lake. The state had title to the bed of the lake within the natural shores thereof. The United States never had title to the beds of inland lakes within the territory lying northwest of the Ohio River. *Pollard's Lessee v. Hagan*, 3 How. 212; *Martin v. Waddell*, 16 Pet. 410; *Goodtitle v. Kibbe*, 9 How. 478; *Doe v. Beebe*, 13 id. 26; *Pennsylvania v. Wheeling & B. B. Co.* id. 584; *Mobile v. Eslava*, 16 Pet. 234; *Gerhard v. Seekonk R. B. Comm'rs*, 15 R. I. 334; *Den v. Jersey Co.* 15 How. 426; *McCready v. Virginia*, 94 U. S. 391; *Eisenbach v. Hatfield*, 12 L. R. A. 632; Wharton, Am. Law, § 192; Woolsey, Internat. Law, § 54; Holtzendorf, Ency. 1222; *Waukegan Breakwater*, 6 Opin. Att'y Gen. 172; *Hoboken v. Pa. R. Co.* 124 U. S. 656; *Stevens v. P. & N. R. Co.* 34 N. J. Law, 532. When the United States has disposed of lands bordering on a meandered lake by patent without reservation or restriction, it has nothing left to convey, and any patent thereafter issued for land forming the bed or former bed of the lake is void and inoperative. *Lamprey v. State*, 52 Minn. 181; *Renwick, S. & C. v. D. & N. W. R. Co.* 49 Iowa, 664; *Case v. Toftus*, 39 Fed. Rep. 730; *Huse v. Glover*, 119 U. S. 543. The question whether the land forming the beds of lakes belongs to the state or to the owners of riparian lands is a question to be determined entirely by the laws of the state in which the lands are located. *Hardin v. Jordan*, 140 U. S. 371; *Mitchell v. Smale*, id. 406; *Lamprey v. State*, 52 Minn. 192. Even if, so long as a lake exists, the state has no right to dispose of the soil under the water or deprive the riparian owner of his rights to use the waters for navigation, fishing, hunting,

and the like, yet, when it ceases to be a lake and becomes a morass, or rice swamp, or dry land, by an artificial or other sudden cause which does not give the title to the soil to the riparian proprietor under the doctrine of either accretion or retrocession, then the title to the lake bed is and must be in the state, and it has the right to dispose of the same, by the very nature of things. *Lake Superior L. Co. v. Emerson*, 38 Minn. 406, 8 Am. St. Rep. 679; *Noyes v. Collins*, 92 Iowa, 566; *Schlosser v. Crookshank*, 65 N. W. Rep. 344; Vattel, Law of Nations, §§ 274, 276, ch. xxii. In New York the state sells the land under the water in its lakes and gives title. *People ex rel. Burnham v. Jones*, 112 N. Y. 597; *Kingsland v. New York*, 110 id. 584; *People ex rel. Loomis v. Canal Appraisers*, 33 id. 461; *Towle v. Remsen*, 70 id. 308, 322. The waters in a navigable river or other navigable body of water are so far the property of the state that the state may control them for public purposes, in their flow or otherwise, without making any compensation to the riparian owners. *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 659; *Canal Appraisers v. People*, 17 Wend. 571; *People ex rel. Loomis v. Canal Appraisers*, 33 N. Y. 500. And if the public good and public health require that the lake should be thoroughly drained, then the state can do so without claim for damages by or on behalf of any riparian owner. *Cohn v. Wausau B. Co.* 47 Wis. 314; *Stevens Point B. Co. v. Reilly*, 46 id. 243; *McKeen v. Delaware D. C. Co.* 49 Pa. St. 424. What the state could do by itself it certainly has the right to employ the defendant to do for it, and to give such compensation, including the lands, as the legislature in its wisdom may see fit. Ch. 202, Laws of 1891, was in effect the making of a contract with an individual by the state for the abatement of a public nuisance maintained upon the land of the state, and if any incidental injury was done to the plaintiff or any adjacent owner from the doing of the work it was not a

taking of his property for public use, and no liability was
created. *Alexander v. Milwaukee*, 16 Wis. 247.

CASSODAY, C. J. Upon the facts stated it must be admitted that, January 1, 1888, and for several years prior thereto,
the plaintiff was the owner of the land mentioned; that the
same extended to the lake upon the north side or shore
thereof; and that he had a natural frontage upon the lake
of about 100 rods. That being so, it must be conceded that,
during that time, the plaintiff owned and possessed all the
rights and privileges in and upon that lake incident to such
riparian proprietorship. It has repeatedly been held, in
effect, by the supreme court of the United States, that it is
for the several states themselves to determine to what waters
and to what extent the prerogatives of the state shall be
exercised in regulating and controlling the shores of such
waters and the lands under them, and that, if any state determine to resign to riparian proprietors rights which properly belong to it in its sovereign capacity, it is not for others
to raise objections. *Barney v. Keokuk*, 94 U. S. 338; *Hardin v. Jordan*, 140 U. S. 382; *Kaukauna Water Power Co.
v. Green Bay & M. Canal Co.* 142 U. S. 271, 272; *Shively v.
Bowlby*, 152 U. S. 45, 46. In this state it has been repeatedly held that the riparian proprietor upon navigable lakes
and ponds takes the land only to the water's edge, but that,
as such proprietor, he has the exclusive right of access to
and from the lake in front of his land, and of building piers
and wharves there in aid of navigation, not interfering with
the public easement; that such private rights grow out of
his title to the land, and have a pecuniary value, and their
destruction or material abridgment is generally an injury,
entitling him to redress. *Delaplaine v. C. & N. W. R.
Co.* 42 Wis. 214; *Boorman v. Sunnuchs*, 42 Wis. 233; *Diedrich v. N. W. U. R. Co.* 42 Wis. 248; *Cohn v. Wausau Boom*

*Co.* 47 Wis. 322; *J. S. Keator Lumber Co. v. St. Croix Boom Corp.* 72 Wis. 82; *Janesville v. Carpenter*, 77 Wis. 300; *Northern P. L. Co. v. Bigelow*, 84 Wis. 163, 164. Thus in *Cohn v. Wausau Boom Co.*, *supra*, RYAN, C. J., said: "It is settled in this state that a riparian owner on navigable water may construct in front of his land, in shoal water, proper wharves, piers, and booms in aid of navigation, at his peril of obstructing it, far enough to reach actually navigable water. This is properly a riparian right, resting on title to the bank, and not upon title to the soil under the water. It is a private right, however, resting, in the absence of prohibition, upon a passive or implied license by the public, is subordinate to the public use, and may be regulated by law." See, also, *Farnum v. Johnson*, 62 Wis. 620. Quite similar language of Mr. Justice ORTON in *Janesville v. Carpenter*, *supra*, is quoted approvingly by Mr. Justice BROWN in *Kaukauna Water Power Co. v. Green Bay & M. Canal Co.* 142 U. S. 271, 272. Certainly, one such riparian owner, without legislative authority, has no legal right to draw the water from such lake, to the injury of other such riparian proprietors thereon. *Sampson v. Hoddinott*, 87 Eng. C. L. 590; *Wilts & Burks Canal Nav. Co. v. Swindon Water Works Co.* 9 Ch. App. 451; *S. C. L. R.* 7 H. L. 697; *Miner v. Gilmour*, 12 Moore, P. C. 156; *North Shore Co. v. Pion*, 14 App. Cas. 621; *Miller v. Miller*, 9 Pa. St. 74; *Lawson v. Mowry*, 52 Wis. 219; *Kimberly & Clark Co. v. Hewitt*, 79 Wis. 334. Assuming that the state had plenary power over the lake in question and the land beneath its waters, when exercised in aid of commerce or any other legitimate public purpose, yet we are constrained to hold that it had no power to arbitrarily take away or destroy such rights of the plaintiff, as such riparian owner, without his consent, and without compensation, and without due process of law, and for the sole purpose of benefiting some other riparian owner, or for any other mere private purpose. *Arimond v. Green Bay & M.*

*Canal Co.* 31 Wis. 316; *S. C.* 35 Wis. 41; *Barden v. Portage,* 79 Wis. 126; *Cedar Lake Hotel Co. v. Cedar Creek Hydraulic Co.* 79 Wis. 297; *Wis. Water Co. v. Winans,* 85 Wis. 39; *In re Theresa Drainage Dist.* 90 Wis. 301; *Grand Rapids v. Powers,* 89 Mich. 94.

Such having been the obvious rights of the plaintiff, as such riparian owner of the shore of the lake, as they existed January 1, 1888, the question recurs whether he lost such rights by reason of what was thereafter, and prior to April 13, 1891, done under ch. 169, Laws of 1887. As indicated in the statement, the lake was, during that period, through the agency of the commissioners, lowered about four and one-half feet below the low-water mark, and by virtue thereof the plaintiff's whole shore line was extended about two rods. The validity of that act is not before us for consideration; but, from what is before us, we may fairly assume that the plaintiff acquiesced in such proceedings, since he paid the assessments made by such commissioners by reason of the benefits he so acquired. This seems to imply that he was the owner of the land thus uncovered upon his shore line; and we find nothing to the contrary in the allegations of the complaint or the provisions of the act last cited. It was not the case of reliction or accretion by slow and imperceptible degrees from natural agencies. *Boorman v. Sunnuchs,* 42 Wis. 233. Nor was it the case of reliction by avulsion from natural agencies. *Nebraska v. Iowa,* 143 U. S. 359. But it was, apparently, the drainage of low, marshy land, and the lowering of the lake by artificial agencies, for the benefit of riparian owners, including the plaintiff. We must hold that the plaintiff did not thereby lose his rights as a riparian proprietor, and that he continued to have free access to the lake in front of his premises; and especially should this be so since the objection is not raised by the state in its sovereign capacity, but by other alleged riparian owners. This is obvious from the federal cases cited. See.

also, *Boorman v. Sunnuchs, supra; J. S. Keator Lumber Co. v. St. Croix Boom Corp.* 72 Wis. 98.

It follows that the plaintiff was still such riparian proprietor when ch. 202, Laws of 1891, was enacted. As indicated in the statement, that act undertook to grant, convey, assign, and relinquish to James Reynolds, his heirs and assigns, forever, all the right, title, and interest of the state in and to all lands within the limits or boundaries of Muskego and Wind Lakes, as they existed or were shown by the low-water mark lines prior to January 1, 1888, and required him and them to lower the then present mean level of the waters of each of those lakes four and one-half feet more, on the theory that the preservation of the public health and the well-being of the communities adjacent to said lakes imperatively required that such system of drainage, previously adopted, should be extended, enlarged, and completed, so as to effectually drain such wet and overflowed lands. The act provided, in effect, that after Reynolds, his heirs and assigns, should receive, from sales of lands thus uncovered and drained, all expenses incident thereto, then out of the first net avails of such sales he or they should pay back fifty per centum of the assessments which had thus previously been paid under the act of 1887; and the act further provided, in effect, that nothing therein should "be construed to defeat or impair any right of action" that might "arise to recover damages caused to any person or property by carrying out the provisions of that act." Sec. 8. Reynolds, to whom such important rights were thus granted, conveyed, assigned, and relinquished, was at the time, as alleged, a resident of Illinois. About the time of that enactment the defendant appears to have been incorporated, under the laws of this state, "for the purpose of purchasing, improving, and selling real estate, and of constructing canals, ditches, drains, and levees for agricultural and sanitary draining or mining purposes, for the creation and control of water powers, for the

improvement of any lakes and streams within the lands owned by it, and the stocking of said lakes with fish, and also for the purpose of acquiring the rights and assuming the duties and obligations, if any, of one James Reynolds in and to such rights, duties, and obligations, if any, as had been prior thereto granted and conveyed to said James Reynolds by act of legislature of this state." As indicated in the statement, twelve days after that enactment Reynolds and wife conveyed all that he thereby acquired to the defendant. The purpose of incorporating the defendant, as thus alleged, pretty clearly indicates the purpose of the enactment in question. The manifest purpose of both was to secure speculative advantage and pecuniary gain to private parties. Such being the case, the act in question and the conveyance from Reynolds and wife to the defendant both come within the condemnation of this court, as expressed in an opinion by Mr. Justice PINNEY, wherein it was said: "In *Ill. Cent. R. Co. v. Illinois*, 146 U. S. 387, it was held, among other things, that 'riparian rights are incident to riparian ownership, and existing with it, and passing with the transfer of the land. The land must not only be contiguous to the water, but in contact with it. That proximity without contact is insufficient. The riparian right attaches to land on the border of navigable water, without any declaration to that effect from the former owner, and its designation in a conveyance by him would be surplusage.' . . . It is plain that no grant by the state, for purely private purposes, of such lands, could operate to impair or defeat the previously acquired rights of the riparian owner; for the state has no right to make such a grant. The right which the state holds in these lands is in virtue of its sovereignty, and in trust for the public purposes of navigation and fishing. The state has no proprietary interest in them, and cannot abdicate its trust in relation to them, and, while it may make a grant of them for public purposes, it may not make

an irrepealable one; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation. These views are maintained with clearness and vigor in the very able and elaborate opinion of the court in the case" last cited. *McLennan v. Prentice*, 85 Wis. 444.

Certainly, if the state had power, by the act in question, to convey and relinquish to "James Reynolds, his heirs and assigns, forever," and hence to the defendant,— a private corporation,— all its right, title, and interest in and to all lands lying within the limits of Muskego Lake, then it may, in a similar manner, convey and relinquish to private persons or corporations all such right, title, and interest in and to every one of the 1,240 lakes in Wisconsin. Such conveyance and relinquishment is claimed to be a legitimate exercise of the police power of the state; and it is contended that, because the act asserts that such system of drainage is required for the preservation of the public health, the same is conclusive upon all courts. While the question of the necessity, expediency, or propriety of taking private property for public use is for the legislative department of the government, yet the question whether a particular use is public or private is for the judicial department. *Wis. Water Co. v. Winans*, 85 Wis. 39, 40, and authorities there cited. In *Everett v. Marquette*, 53 Mich. 452, in considering the question whether the maintaining of a particular structure within the limits of the street constituted a public nuisance, COOLEY, C. J., said: "While the city council is entitled, under its supervisory control of the public streets, to consider and pass upon that question for the purpose of deciding upon the institution of legal proceedings for abatement, it cannot make itself the judge. Maintaining a nuisance is a public offense, and the fact, as in other cases of alleged criminality, is to be tried on proper accusation and in the regular courts." In a later case in the same court, it was held that "the legislature has no power to authorize a municipality

to make that a purpresture or nuisance which is not so in fact,. if, by so doing, the constitutional rights of any citizen in his person or property are infringed or destroyed." *Grand Rapids v. Powers,* 89 Mich. 94.   See *Chicago, M. & St. P. R. Co. v. Minnesota,* 134 U. S. 418; *St. Louis & S. F. R. Co. v. Gill,* 156 U. S. 649.   So here, upon the facts alleged in the complaint, the legislature had no power, under the guise of legislating for the public health, to authorize the destruction of the lake, and thereby create a nuisance, to the great injury of the plaintiff as such riparian owner, for private purposes and for the sole benefit of private parties.

We must hold that the complaint states a cause of action.

*By the Court.—* That portion of the order of the circuit court appealed from is reversed, and the cause is remanded with direction to overrule the demurrer, and for further proceedings according to law.