THE HONORABLE, THE SENATE
By Senate Resolution 43, 1971, you have asked for my opinion on the interpretation of the words, "in the public interest" as used in 1971 Assembly Bill 859. In 1919, when the Wisconsin Legislature authorized the city of Kenosha to reclaim some submerged land at its Lake Michigan shoreline, the legislation restricted the use of the lands to: "For public park purposes." Assembly Bill 859 would delete that restriction so that the lands can be used for any purpose as long as that purpose is now "in the public interest."
Section 990.01 (1), Stats., indicates that "all words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." The common and approved usages of "public interest" involve something in which the public, the community at large, is involved and has an interest or right which may be affected.State ex rel. Burgum v. North Dakota Hospital Service Association
(1960), 106 N.W.2d 545. It does not mean anything so narrow as the interests of the particular localities which may be affected by the matter in question. State v. Crockett (1922), 206 P. 816,86 Okl. 124. "The term `public interest' is a very broad and *Page 132 
comprehensive one. It means different things in different connotations." Gateway City Transfer Co. v. P.S.C. (1948),253 Wis. 397, 404, 34 N.W. 238.
Determinations of public interest are a legislative function and are not within the province of the judiciary. See In re Cityof Beloit (1968), 37 Wis.2d 637, 155 N.W.2d 633; In re City ofFond du Lac, (1969), 42 Wis.2d 323, 166 N.W.2d 225; OutagamieCounty v. Smith (1968), 38 Wis.2d 24, 155 N.W.2d 639. If Assembly Bill 859 becomes law, it would, in effect, be a delegation of power of the legislature to the city of Kenosha. The latter would have to initially determine whether a proposed use was in the public interest. Because the use and enjoyment of submerged land at Lake Michigan's shoreline is involved, any determination of public interest, whether it be by the legislature or delegated body, is subject to limitations imposed by the public trust doctrine. Therefore, I would like to invite your attention to that doctrine.
In Wisconsin, navigable waters are said to be held in trust by the state for the public. State v. Public Service Commission
(1957), 275 Wis. 112, 81 N.W.2d 71. The courts have sometimes ascribed the trust doctrine to the Northwest Ordinance of 1787. See Attorney General v. City of Eau Claire (1875), 37 Wis. 400,446; and Lundberg v. University of Notre Dame (1938), 231 Wis. 187,192, 282 N.W. 70, 73. The court has also attributed the public trust doctrine to the Wisconsin Constitution. See Angelov. Railroad Commission (1928), 194 Wis. 543, 549, 551,217 N.W. 570, 573, 574. Other times, the public trust doctrine has been ascribed to a combination of these sources. See Muench v. PublicService Commission (1952), 261 Wis. 492, 515, 53 N.W.2d 514,55 N.W.2d 40, 45. Title to the lake beds passed to the state as an incident of sovereignty. A grant invests in the grantee such rights of property in respect to the beds as are consistent with the public welfare. See Page, Alienation of Beds of Public Lakes
— The Trust Doctrine, 1928 Wis. L. Rev. 39. Traditional public trust laws also embrace park lands, especially if they have been donated to the public for specific purposes, and, as a minimum, it operates to require that such lands not be used for non-park purposes; however, it is uncommon to find decisions that constrain public authorities in the specific uses to which they may put park lands, *Page 133 
unless the lands are reallocated to a very different use. See Sax, The Public Trust Doctrine in Natural Resources Law:Effective Judicial Intervention, 68 Mich. Rev. 556 (1970). Since the submerged land involved herein is subject to the public trust, its use must be in consonance with that trust.
Local public interests may interfere with the public trust in the same manner as private interests, for many aspects of local self-interest are as inconsistent with the broad public interest as are projects of private enterprises. See People ex rel. SanFrancisco Bay Conservation and Development Commission v. Town ofEmeryville (1968), 69 Cal. 2d 533, 446 P.2d 790. Any requirement that the facilities be public reduces the potential for overreaching by private interests and ensures the benefits will be relatively widely distributed among the citizenry. The Wisconsin Court will require that a showing of justification be made whenever resources which are generally available to the public without cost are, in any significant way, subordinated to a more limited set of private interests. See Priewe v. WisconsinState Land and Improvement Co. (1896), 93 Wis. 534, 67 N.W. 918.
In State v. Public Service Commission, supra, the city of Madison, among other things, wanted to fill a portion of a lake bed and use it for park purposes. The Wisconsin Supreme Court allowed the city to do this and said that the trust doctrine would prevent a grant for a purely private purpose, and "even for a public purpose, the State could not change an entire lake into a dry land nor alter it so as to destroy its character as a lake," nonetheless, "the trust doctrine does not prevent minor alterations of natural boundaries between water and land." (275 Wis. 118) Also, the purposes of the trust include all public uses of navigable waters. The advancement of one use over another may be promoted at relatively minor sacrifice; however, the weighing of the relative values must be in harmony with the public trust doctrine. See Ashwaubenon v. Public Service Commission (1963),22 Wis.2d 38, 125 N.W.2d 647.
Since the term "in the public interest" has a broader significance than the term "for public park purposes," it is apparent that the intended potential use of the reclaimed lands is being expanded. I am of the opinion that this augmented usage must be in harmony with the public trust doctrine, a doctrine *Page 134 
which requires that the submerged land be used for a public purpose or to the extent that it is granted to a private person for a private use, that use must be a part of a scheme or plan which will enhance the public rights in the use of this natural resource. See Milwaukee v. State (1927), 193 Wis. 423,214 N.W. 820. Furthermore, the property subject to the trust must be maintained for particular types of uses, that is, the resource must be held available for certain traditional uses, uses which are related to the natural uses peculiar to the resource. Basically then, the trust property should be devoted to the fulfillment of the purposes of the trust, specifically, the service of the people. Hayes v. Bowman (1957), 91 S. 2d 795, 799.
RWW:SHS