In re Southern Wisconsin Power Co. 140 Wis. 245.

IN RE SOUTHERN WISCONSIN POWER COMPANY: APPEAL OF
BLACK HAWK LAND COMPANY.

*September 14—October 5, 1909.*

*Constitutional law: Statutes: Private and local acts: Sufficiency of
title: Location of dam authorized to be built: Granting corpo-
rate powers: Special act: Franchises not corporate: Assign-
ment to corporation: Statute construed: Purposes for which
corporations may be formed: Dams on navigable rivers: Leg-
islative grant: Who may question: Public purposes: Eminent
domain: Circuit judges: Holding court for one another: Orders
at chambers.*

1. The title of a private or local act should be liberally construed,
   and the act should not be declared void under sec. 18, art. IV,
   Const., merely because such title does not express the subject
   as fully or as unequivocally as possible.

2. A private or local act should not be held invalid because of in-
   sufficiency of its title unless, giving such title the largest scope
   which reason will permit, something is found in the body of
   the act which is neither within the literal meaning nor the
   spirit of the title nor germane thereto.

3. The title to ch. 462, Laws of 1901, is "An act to authorize [cer-
   tain persons named] to build and maintain a dam across and
   to improve the navigation of the Wisconsin river," etc., the
   particular place where the dam is to be built not being speci-
   fied. *Held* that, assuming the act to be local rather than pri-
   vate, the subject of the act is sufficiently localized in its title
   to meet the requirements of sec. 18, art. IV, Const. *Durkee v.
   Janesville,* 26 Wis. 697; *Anderton v. Milwaukee,* 82 Wis. 279;
   and *Milwaukee Co. v. Isenring,* 109 Wis. 9, distinguished.

4. A franchise granted by the legislature to construct and main-
   tain a dam across a river is not a corporate power or privi-
   lege within the meaning of sec. 31, art. IV, Const., prohibiting
   the legislature from enacting any special or private law grant-
   ing corporate powers or privileges except to cities. Especially
   is this so where the act granting such a franchise (in this
   case ch. 462, Laws of 1901) specifically provides that no corpo-
   rate powers are granted or intended to be granted by it.

5. A franchise, such as the right to build a dam across a river,
   which is not a corporate franchise may be conferred by a special
   or private law upon a corporation already existing. *Stevens*

*Point B. Co. v. Reilly,* 44 Wis. 295, so far as it holds to the contrary, overruled.

6. The franchise to build a dam across the Wisconsin river granted by ch. 462, Laws of 1901, being expressly made assignable, a corporation organized for the purpose under ch. 86, Stats. (1898), had the right, under sec. 1775*a,* to take an assignment of such franchise.

7. Under sec. 1775*a,* Stats. (1898), the acquirement and use of such a franchise is a lawful business or purpose, for which, under sec. 1771, a corporation may be organized.

8. The provision in sec. 4, ch. 462, Laws of 1901, that no corporate powers are granted or intended to be granted by that act, does not prohibit a corporation otherwise created from acquiring and exercising the rights and franchises granted by said act.

9. A statute authorizing individuals "to build and maintain a dam across and to improve the navigation of the Wisconsin river above the same and for the purpose of creating hydraulic power" is not in violation of sec. 1, art. IX, Const. (providing that the navigable waters leading into the Mississippi "shall be common highways and forever free," etc.), and in the absence of legislation on the subject by Congress is within the plenary power of the legislature.

10. When the legislature has granted such authority, and the state does not question that the improvement made is in conformity with the power delegated, neither the necessity nor the usefulness of the improvement, nor the manner in which it is made, can be called in question by private parties, even those whose land is sought to be condemned in aid of the improvement.

11. Whether the particular use for which property is sought to be taken by right of eminent domain is public or private is a question the ultimate decision of which rests with the courts; but this does not preclude the courts from according proper deference to legislative declarations as to what constitutes a public purpose.

12. Where the legislature authorizes the building of a dam across a river to improve the navigation thereof and also for the purpose of creating hydraulic power, either of such purposes is a public one, so that the power of eminent domain may be legally conferred upon the owners of the franchise.

13. The provision in sec. 11, art. VII, Const., that "the judges of the circuit court may hold courts for each other," should be liberally construed, the authority so conferred being intended to include generally the judicial business which a circuit judge is authorized by law to transact. One circuit judge may, there-

fore, in a proper case make orders at chambers in another cir-
cuit.

14. Even if the provision above quoted expressly authorizes a cir-
cuit judge to hold court only at a regular term outside of his
circuit, it does not preclude the legislature from conferring
larger powers, as has been done in sec. 2432, Stats. (1898).

APPEAL from an order of the circuit court for Juneau
county: JAMES O'NEILL, Judge.   *Affirmed.*

This is an appeal from an order of the circuit court for
Juneau county denying the motion of the *Black Hawk Land
Company* to vacate and set aside an order appointing com-
missioners of appraisal in condemnation proceedings.

Ch. 462, Laws of 1901, was entitled "An act to authorize
William Gunther, A. D. Johnson and A. B. Whitman, their
and each of their heirs, executors, administrators and assigns
to build and maintain a dam across and to improve the navi-
gation of the Wisconsin river above the same, and for the
purpose of creating hydraulic power." Sec. 1 of the act pro-
vided for the location of the dam and its height. Sec. 2 pro-
vided that in case it should be necessary to take, flow, or
injure any lands for the purpose of constructing the dam
authorized or for the purpose of improvement, the grantees
named in the franchise should be subject to all the provisions,
remedies, and liabilities contained in ch. 146, Stats. (1898),
entitled "Of Mills and Milldams." Sec. 3 of the act pro-
vided that for the purpose of acquiring the necessary lands
for flowage purposes, said parties, their heirs and assigns,
might enjoy the rights granted to and conferred upon cor-
porations by secs. 1850 to 1857, inclusive, of the Statutes of
1898 and of amendments thereto. Sec. 4 of the act pro-
vided that no corporate powers were granted or intended to
be granted by it, and that the same should not be construed
or deemed to grant corporate powers.

The *Southern Wisconsin Power Company,* the petitioner
herein, is a corporation organized under the provisions of

ch. 86, Stats. (1898). The rights and franchises conferred by ch. 462, Laws of 1901, were in form assigned to said corporation after its organization and before it attempted to institute condemnation proceedings. In its application for the appointment of commissioners to appraise land for flowage purposes it set forth the fact of its incorporation and of the assignment of the aforesaid franchise, and also averred that it was proceeding with the construction of the dam authorized by the act in question, and that it was necessary to overflow certain described lands in order to carry out the objects and purposes of such act, and that it was unable to agree with certain landowners for the purchase, lease, or use of such lands or for such easement therein as was necessary, or upon the amount of compensation that should be paid for the taking of such property.

The *Black Hawk Land Company* is the owner of certain lands sought to be condemned by the petitioner, and interposed an answer to such petition setting forth its reasons why its lands should not be appropriated by the petitioner, and moved for an order vacating the order appointing commissioners in the condemnation proceedings. The court refused to set aside such order, and from the order denying the motion to vacate this appeal is taken.

For the appellant there were briefs by *Cary, Upham & Black,* and oral argument by *Alfred L. Cary.*

For the respondent there was a brief by *Jones & Schubring,* and oral argument by *B. W. Jones.*

BARNES, J. The appellant contends (1) that ch. 462, Laws of 1901, violates sec. 18, art. IV, of the constitution of Wisconsin because the subject of the act is not expressed in the title; (2) that the act of 1901 violates sec. 31, art. IV, of our constitution in that it grants corporate powers and privileges; (3) that the rights conferred by the act in question could not lawfully be assigned to or be exercised by a

·corporation because of the restriction contained in its fourth section; (4) that the act is a violation of sec. 1, art. IX, of the .Wisconsin constitution; (5) that the dam in question, while purporting to be in aid of navigation, is in reality destructive of it, and con'stitutes an unlawful structure in a navigable stream; (6) that the respondent is seeking to condemn lands for a private purpose; (7) that the order appointing commissioners was made by a judge who had no right or jurisdiction to make the same.

1. The title to ch. 462, Laws of 1901, authorizes certain persons therein named to build a dam across the Wisconsin river, without specifying the particular place where the dam is to be built. It is urged that the act is local, and that the title to such an act is defective and insufficient unless it refers to the specific place over which the law is to operate, and that such place is not sufficiently localized in the act in question to meet the requirements of sec. 18, art. IV, of our constitution. In support of such contention the following cases in this court are cited. *Durkee v. Janesville,* 26 Wis. 697; *Anderton v. Milwaukee,* 82 Wis. 279, 52 N. W. 95; and *Milwaukee Co. v. Isenring,* 109 Wis. 9, 85 N W. 131.

In *Durkee v. Janesville* and in *Milwaukee Co. v. Isenring* the object sought to be accomplished by the constitutional provision under consideration is pointed out. In the latter case it is said that the framers of the constitution

"intended to guard against the danger of legislation, affecting private or local interests, being smuggled through the legislature under misleading titles, by requiring every bill affecting such interests to be under a title likely to call attention of the lawmakers to its character, and likewise the attention of the people affected, to the end that every member of the legislature may intelligently participate in considering such bill and all objections thereto may be presented."

Substantially the same idea is expressed in *Durkee v. Janesville.* In the latter case it is also said: "The subject of

a local act cannot be expressed in the title without a reference to the place over which it is to operate being made therein." This language is impliedly approved in the *Isenring Case* and in at least one other case to which reference will be hereafter made. The titles to the acts before the court in the two cases under consideration, and which were condemned, made no attempt at localization. A reading of such titles would convey the belief that the acts were general, applying to the entire state. There was absolutely nothing in them to even suggest that the proposed laws should have any restricted or local application. Yet the purpose of the act involved in the *Janesville Case* was to legalize certain acts of the common council of that city, and the acts construed in the *Isenring Case* related only to the fees of the sheriff of Milwaukee county.

In *Anderton v. Milwaukee, supra,* the act involved was held void as being in violation of sec. 1 of the XIVth amendment to the federal constitution. The court also said that the act was local and related to a subject not expressed in its title, and hence violated sec. 18, art. IV, of the constitution of Wisconsin. On what ground this part of the decision was placed is not apparent. The act was entitled "An act to authorize the city of Milwaukee to change the grade of streets." [Ch. 254, Laws of 1891.] The body of the act referred to a certain limited district in the city of Milwaukee, and appellant contends that it was held void because the particular district affected was not set forth in the title. If such was the view of the court, this case goes to a greater extreme than any other that has been called to our attention in requiring the title to a local act to designate the exact locality to be affected, and comes nearest to being authority in point upon the proposition to which it is cited. An examination of the briefs filed in that case shows that the principal ground of attack upon the law, as being a violation of sec. 18, art. IV, Const., was not because the title was not sufficiently localized. It

was urged that, while the act purported to authorize the city to change the grade of its streets, it in fact conferred no power in this behalf that the city did not already possess; that under the existing laws owners of property abutting on streets were entitled to damages sustained by reason of a change in grade, and that the act in question attempted to repeal such laws as to about one fortieth of the street frontage in the city, leaving them in full force as to the remainder, and that the title to the act was misleading, in that the body thereof sought to accomplish another and an entirely different purpose from that expressed in the title. We think the misstatement of the purpose of the law in its title constituted the substantial objections to its validity under sec. 18, art. IV, of the constitution. But, assuming that the court decided that the title did not sufficiently localize the act, there is an important distinction between the *Anderton Case* and the one we are presently considering. A reading of the title to the act there involved would lead the reader to believe that whatever was its purpose it affected the entire city of Milwaukee and not a very small fraction of it. A resident of the city reading such title would have no reason to believe that the locality in which he owned property was affected to any greater extent than any other locality in the city. On the other hand, ch. 462, Laws of 1901, authorized the building of but a single dam. The title to the act informs every one that the act authorizes the building of but one dam and that such dam is to be located on the Wisconsin river. It misleads no one, although it is not as definite as to location as it might be made.

An act of the legislature should not be adjudged invalid except upon clear and unmistakable grounds, and the title of a private or local act should be liberally construed, and the act should not be declared void merely because such title does not express the subject as fully or as unequivocally as possible. *Mills v. Charleton,* 29 Wis. 400. The title to an act

must be liberally construed, giving all reasonable leeway for the exercise of legislative discretion. It should not be held insufficient if a reasonable doubt exists as to its sufficiency. It is only where the title is so insufficient and so defective as not to reasonably suggest the purpose of the act it covers, and where a reading of the act will disclose provisions that are clearly outside of its title, that it will be held invalid. *Milwaukee Co. v. Isenring,* 109 Wis. 9, 24, 85 N. W. 131. The title to a legislative act must not only be liberally construed, but the act should not be condemned as insufficient because of the title, unless, giving such title the largest scope which reason will permit, something is found in the body of the act which is neither within the literal meaning nor the spirit of the title nor germane thereto.

"Courts cannot sit in judgment upon the work of the legislature and decide one of its acts unconstitutional, merely because the title thereof is not as comprehensive as it might have been made. Within all reasonable boundaries, legislative discretion in that field cannot be rightfully interfered with." *Diana S. Club v. Lamoreux,* 114 Wis. 44, 48, 89 N. W. 880, 882.

In this case the following language of the New York court of appeals in *People ex rel. Comm'rs v. Banks,* 67 N. Y. 568, 572, is cited with approval:

'The constitution does not require the title of a private or local bill to disclose or shadow forth the character of the proposed legislation, its full scope and purpose, and to make known the several interests which may be directly or indirectly affected by it so as to attract attention and give notice of all that is to be accomplished by the proposed act. The constitution requires the subject of the act to be expressed in the title, but leaves the mode of expressing it wholly to the discretion of the legislature.'

Passing from these general statements, indicating the attitude with which courts approach such a question as we have before us, to specific instances where the sufficiency of the

titles to private and local laws was passed upon, we find that the decisions in specific cases are, with great unanimity, in entire harmony with the general rules adverted to.

Ch. 299, P. & L. Laws of 1855, was entitled "An act to incorporate the Sugar River Valley Railroad Company." By ch. 38, P. & L. Laws of 1858, it was provided that the privileges granted by the act should cease at the expiration of eight years from the passage of the act, unless the company should have constructed ten miles of its road. Ch. 273, P. & L. Laws of 1870, was entitled "An act to revive and amend the act to incorporate the Sugar River Valley Railroad, approved March 29, 1855, and to authorize certain towns therein named to aid in the construction of said railroad." It will be observed that the towns to which the law was to apply were not named in the title to the act, but it was held that the title sufficiently localized the act, and that it was not subject to the objection that was held fatal in *Durkee v. Janesville,* 26 Wis. 697. *Phillips v. Albany,* 28 Wis. 340.

Ch. 25, Laws of 1870, was entitled "An act to authorize certain counties, towns, cities and villages to aid the Milwaukee & Northern Railway Company." It was contended that this act was void because the subject thereof was not sufficiently expressed in the title. The municipalities affected by the act were not named in the title, and could be ascertained only by a reference to the body of the act. The court said: "We do not think the provision in the constitution requires any such particularity in the title, and it would certainly be very inconvenient to observe it in practical legislation." *Lawson v. M. & N. R. Co.* 30 Wis. 597, 600.

Ch. 398, P. & L. Laws of 1868, was entitled "An act to amend ch. 170 of the Private Laws of 1857, entitled 'An act to incorporate the Yellow River Improvement Company,' approved March 2, 1857." This act authorized the improvement of a navigable stream and the building of dams thereon. The court in construing it said that it "must, under the

decisions of this court, be held to be a local act, within the meaning of the constitutional provision above referred to." Sec. 18, art. IV, Const.   Counsel for appellant cite this decision in support of the proposition that ch. 462, Laws of 1901, is a local act.   Nothing is said in the title to indicate that the act confers power to construct dams at any particular point on the Yellow river, nor in fact to construct any dams at all, except as such power might be inferred from the fact that a corporation is created, and yet the title to the act was held to embrace the subjects embodied in it, among them the power to erect dams.   *Yellow River Imp. Co. v. Arnold,* 46 Wis. 214, 49 N. W. 971.   The court, while holding the act local, said:

"The real question of any difficulty in this case is the one discussed in *Mills v. Charleton, supra* [29 Wis. 400]; and that is whether the title of the act is so specific and restricted that it cannot be said to indicate any intention to confer such rights upon the corporation, and therefore the subject is not expressed therein."

Ch. 454, P. & L. Laws of 1867, was entitled "An act to incorporate the Mechanics' Union Manufacturing Company."   Said corporation was empowered, among other things,

"to construct and maintain all such dam or dams, canal or canals, waterways, reservoirs, flumes and races as may be necessary in the business operations of said company, and may lease or sell any surplus water or water power created by their said dam or dams; provided that said company shall have no authority to build or erect the dam or dams hereby authorized except across Rock river, at or near Horicon, in the county of Dodge."

Still another provision of the act authorized the corporation "to keep and maintain the dam across Rock river now erected in the village of Horicon, in the county of Dodge, in case the person or persons, body corporate or politic owning said dam shall convey their right, title and interest in and to the same, and the parcels of lands on which it abuts, to the company hereby created."

This act was before this court and its constitutionality was attacked on the ground that it violated sec. 18, art. IV, of our constitution, and it was upheld in an elaborate opinion, in which the authorities on this subject in this and other courts are reviewed. *Diana S. Club v. Lamoreux,* 114 Wis. 44, 89 N. W. 880. It is true, it is said in the opinion in that case that the act is private rather than local. This portion of the decision either overlooked or overruled the first quoted portion of *Yellow River Imp. Co. v. Arnold, supra.* These two acts legitimately fall under the same classification. If one is private the other is, and if one is local the other is. Both were acts creating corporations. Both authorized the construction of dams. The Yellow river, being capable of floating logs, was navigable in fact under a long line of decisions. *Whisler v. Wilkinson,* 22 Wis. 572; *Sellers v. Union L. Co.* 39 Wis. 525; *Olson v. Merrill,* 42 Wis. 203; *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* 74 Wis. 652, 43 N. W. 660; *Falls Mfg. Co. v. Oconto R. Imp. Co.* 87 Wis. 134, 58 N. W. 257; *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273. The Rock river at Horicon was also a navigable stream. Sec. 1607, Stats. (1898); *In re Horicon D. Dist.* 136 Wis. 227, 232, 116 N. W. 12. We fail to discover any substantial ground for holding one of these acts local and the other private and not local, and we think these two acts and ch. 462, Laws of 1901, fall within the same category in this regard. If one is local then the others are, and if one is private the same is true of the others; and it is significant that the titles involved in the cases of the *Yellow River Imp. Co. v. Arnold* and *Diana S. Club v. Lamoreux* are much more general in their scope and character, and much more likely to mislead the legislature and the public as to the character of the legislation, than is the title to the act under consideration in the present case.

We fail to find any case where such a title as is here involved has been condemned by this court. As has been said,

there are a number of cases where titles more ambiguous have been upheld. The general language used in *Durkee v. Janesville*, 26 Wis. 697, that the title to a local act must refer to the place over which the law is to operate, must be construed with reference to the facts in that particular case. The same general language is used in *Yellow River Imp. Co. v. Arnold*, and yet the court there held that a title which simply authorized the incorporation of a company was broad enough to enable the legislature to confer on such company by the act the power to dam a navigable stream, because the power conferred was properly connected with or necessary or pertinent to the general objects expressed in the title.

We entertain no doubt that *Durkee v. Janesville, supra*, and *Milwaukee Co. v. Isenring*, 109 Wis. 9, 85 N. W. 131, were correctly decided. The titles involved in each of these cases were such as conveyed the idea that the proposed laws were general and applicable to the entire state. There was nothing about the titles to suggest that the acts were either private or local, although one of the acts related to a single city and two of them related to a single county in the state. The law here involved is not localized in the title to the extent it might be, but still it is localized. It expressly negatives the idea that it is of state-wide application, and informs all persons who read it that the body of the act refers to some specified point on the Wisconsin river. It is true that this river passes through the entire length of our state and is several hundred miles long. But it is also true that there are comparatively few points thereon suitable for dams, so that the wide scope of the title is more apparent than real. We think a substantial distinction between this case and the cases relied on by appellant is this: A resident of Milwaukee county reading the titles to the acts involved in the *Isenring Case*, or a resident of Janesville reading the title to the act involved in the *Durkee Case*, would have no reason to suppose that his domicile was affected by these acts to any greater

extent than any other portion of the state, while in the instant case the reader is advised that it is proposed to erect a dam at some point on the Wisconsin river. If he were interested in the subject he would naturally turn to the act itself for further information. In the one case the title is positively misleading; in the other it does not mislead at all. It is not as specific as it might be made, but it is sufficiently specific to put the reader on inquiry as to what the real nature and character of the law is. The power conferred by the act to build a dam at a definite location is pertinent to and is properly connected with the general object expressed in the title, which is the test adopted in the *Yellow River Imp. Co. Case.*

In view of the deference that this court must pay to acts of the legislature, and in view of the decided cases in this court, we must hold that the title to the act in question does not run counter to the reasons given in *Durkee v. Janesville* and in *Milwaukee Co. v. Isenring* for the adoption of sec. 18, art. IV, of our constitution, and that, assuming such act to be local rather than private, the subject of the act is sufficiently localized in its title to meet the constitutional requirement.

2. It is next urged that the respondent is claiming corporate powers and privileges granted by a special law, which is prohibited by sec. 31, art. IV, of the constitution. It is argued in support of this contention that the legislature could not by special act create a corporation and confer such powers upon it, or confer them directly upon a corporation organized under ch. 86, Stats. (1898), and that a corporation cannot be formed for a purpose not authorized by ch. 86, and cannot exercise powers or functions not therein provided for. While the franchise here granted was a legislative grant, it was not a corporate power or privilege within the meaning of sec. 31, art. IV, of the constitution. If such a franchise were granted to a corporation it would become its property,

but would not be essential to its corporate existence. The clause prohibiting the granting of corporate powers or privileges simply prohibits the grant of corporate charters by special act. A franchise is not essentially corporate, and it is not the grant of a franchise that is prohibited by the constitution, but the grant of a corporate franchise. The sale of the franchise here granted by the corporation would not destroy its corporate existence. *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 514, 83 N. W. 851; *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 441, 83 N. W. 697; *Black River Imp. Co. v. Holway,* 87 Wis. 584, 59 N. W. 126; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425, 560. That the grantees of a franchise might lawfully convey the same to a corporation organized under the general law was decided in *Underwood L. Co. v. Pelican B. Co.* 76 Wis. 76, 82, 45 N. W. 18. Besides, this act specifically provides that no corporate powers are granted or intended to be granted by it.

The *Linden L. Co. Case* definitely decided that a franchise might be conferred on a corporation already created. If this be true, then no good reason is apparent why a franchise might not be assigned to such a corporation, assuming that the scope of its articles of incorporation was such as to permit it to take the assignment. On the oral argument counsel conceded that their position is not well taken if the court follows the decision in the *Linden L. Co. Case.* That case was important, was well presented at the bar, and was well considered by the court, and doubtless many valuable property rights have been acquired on the strength of it, and it should require a strong showing to now overturn it. The decision does not appear to be in harmony with *Stevens Point B. Co. v. Reilly,* 44 Wis. 295. This case is not referred to in the opinion, but it appears from the statement of the case that it was cited to the court, and it must be con-

sidered as overruled in so far as it holds that a franchise cannot be granted to an existing corporation. We do not think that the decision in the *Linden L. Co. Case* should now be disturbed.

In reference to the assignability of the franchise, the law granting it provides that it may be assigned, and the general statute (sec. 1775*a*, Stats. 1898) authorizes 'corporations to take by purchase or assignment the privileges or franchises granted to individuals either before or after that statute was passed, so that we have a general law expressly authorizing corporations organized under ch. 86 to take an assignment of such a franchise as was granted by ch. 462, Laws of 1901. Sec. 1771, Stats. (1898), after enumerating the specific purposes for which corporations may be organized, provides generally that they may be organized for any lawful business or purpose. Sec. 1775*a*, Stats. (1898), has made the acquirement and use of a franchise such as is here involved a lawful business or purpose, if it could be made lawful by statute law, and we think it could.

3. Sec. 4, ch. 462, Laws of 1901, provided that no corporate powers were granted or intended to be granted by the act, and that it should not be construed or deemed to grant such powers. Appellant maintains that this section should be construed as a prohibition against the acquirement or exercise, by a corporate entity, of the rights and franchises granted. We do not think so. Such is not the natural meaning or import of the words used. Had the legislature intended to prevent a corporation from acquiring or exercising the rights and privileges granted, it would have been an easy matter to explicitly express such intent. It is not probable that it would have been left to courts to divine such purpose by somewhat farfetched conjecture. It is more reasonable to suppose that, through overcaution on the part of the persons drafting the bill or on the part of the legislature that

passed it, it was intended to forestall any possible attempt to claim that the act in fact created a corporation and granted corporate privileges thereto.

4. It is next asserted that ch. 462, Laws of 1901, violated sec. 1, art. IX, of our state constitution, which provides:

"And the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor."

It is urged that the act of 1901 authorized the construction of a dam from bank to bank across the channel of a navigable stream which discharges its waters into the Mississippi river, and that such dam is an obstruction in the river and prevents the free navigation thereof guaranteed by the constitution and by art. 4 of the Ordinance of 1787.

This objection to the law is answered by numerous decisions of the supreme court of the United States. These decisions establish the following propositions: (a) Under the commerce clause of the federal constitution the Congress of the United States has jurisdiction over all navigable waters therein. (b) As to navigable streams entirely within the borders of a single state, such state has plenary power in the absence of Congressional action, but Congress is not concluded by anything that the state, or individuals by its authority, may have done from assuming entire control over such streams, and abating any erections that may have been made and preventing others from being made. (c) In the absence of legislation by Congress on the subject, a statute of a state which authorizes the construction of a dam across a navigable river wholly within such state is constitutional. (d) There must be a direct statute of the United States in order to bring within the scope of its laws obstructions and nuisances in a navigable stream wholly within a state.

(e) The clause in the constitution providing that the navi-gable waters therein referred to "shall be common highways and forever free," etc., does not refer to physical obstructions of these waters, but refers to political regulations which would hamper the freedom of commerce. *Willamette I. B. Co. v. Hatch,* 125 U S. 1, 8 Sup. Ct. 811, *Pound v. Turck,* 95 U. S. 459; *Willson v. Black Bird Creek M. Co.* 2 Pet. 245; *Gilman v. Philadelphia,* 3 Wall. 713; *Monongahela Nav. Co. v. U. S.* 148 U. S. 312, 13 Sup. Ct. 622; *Montgomery v. Portland,* 190 U. S. 89, 23 Sup. Ct. 735. The case of *Pound v. Turck, supra,* arose out of an act of the Wisconsin legislature authorizing the construction of a dam across the Chippewa river, a navigable stream, and involved the construction of sec. 1, art. IX, of our constitution.

This court has also held that it is within the power of the legislature of the state to authorize the construction of a dam across a navigable stream. *Wis. River Imp. Co. v. Manson,* 43 Wis. 255; *Black River F. D. Asso. v. Ketchum,* 54 Wis. 313, 11 N. W. 551; *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 659, 11 N. W. 443; *J. S. Keator L. Co. v. St. Croix B. Corp.* 72 Wis. 62, 38 N. W 529 The dam here permitted to be erected is authorized in aid of navigation, and the power of the legislature is plenary to empower individuals to construct dams in navigable streams of the state for such a purpose. *Falls Mfg. Co. v. Oconto River Imp. Co.* 87 Wis. 134, and cases cited on page 150, 58 N. W. 257, 261, *In re Dancy D. Dist.* 129 Wis. 129, 139, 108 N. W. 202.

5. It is next urged that, while the act specifies that its purpose is to improve the navigation of the Wisconsin river above the dam, such dam is in fact an obstruction to navigation, extending as it does from bank to bank and being fifteen feet in height, that its real purpose is to create hydraulic power; and that the navigation of the river cannot be obstructed for any such purpose. It has been held that the legislature is

at least primarily the judge of the necessity for the proposed improvement, and that when it delegates such a power, and the state does not question that the improvement made is in conformity with the power delegated, neither the necessity nor the usefulness of the improvement, nor the manner in which it is made, can be called in question by private parties. *Wis. River Imp. Co. v. Manson,* 43 Wis. 255, 265; *Falls Mfg. Co. v. Oconto River Imp. Co.* 87 Wis. 134, 151, 58 N. W. 257; *Underwood L. Co. v. Pelican B. Co.* 76 Wis. 76, 85, 45 N. W. 18; *J. S. Keator L. Co. v. St. Croix B. Corp.* 72 Wis. 62, 81, 38 N. W. 529; *Cohn v. Wausau B. Co.* 47 Wis. 314, 326, 2 N. W. 546; *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 659, 686, 11 N. W. 443. It is true that none of the cases cited involved the rights of a landowner whose property it was sought to condemn in aid of the alleged improvement. But the same rule with little, if any, variation has been applied in a condemnation proceeding against a landowner (*Chicago & N. W. R. Co. v. Morehouse,* 112 Wis. 1, 9, 87 N. W. 849), and in an action brought by a landowner whose lands were overflowed, to abate a dam authorized by the legislature. *Allaby v. Mauston E. S. Co.* 135 Wis. 345, 352, 116 N. W. 4. A dam authorized for the creation of hydraulic power, generated for the purpose of sale, is authorized for a public purpose. *Wis. River Imp. Co. v. Pier,* 137 Wis. 325, 118 N W. 857. The question of how far the legislature might destroy the public use of navigation, in aid of the public use of generating hydraulic power, is not involved under the facts in this case, because it appears from the evidence that the dam did improve the navigation of the stream above its location, while the alleged injury which the dam caused to navigation was inconsequential and largely theoretical.

6. It is next urged that respondent is seeking to condemn lands for a private use. It is argued that whether the particular use for which property is sought to be condemned is

public or private is a question of fact, the ultimate decision of which rests with the courts, and the following cases are cited in support of the contention that the question urged is a judicial one: *Wis. W. Co. v. Winans,* 85 Wis. 26, 54 N. W. 1003; *Priewe v. Wis. S. L. & I. Co.* 93 Wis. 534, 67 N. W. 918; *S. C.* 103 Wis. 537 79 N W. 780; *Matter of Niagara Falls & W. R. Co.* 108 N. Y. 375, 15 N. E. 429.    The right of the courts to decide whether the purpose is public for which it is proposed to condemn property is undoubted.   Such a rule does not preclude the courts from according proper deference to legislative declarations as to what constitutes a public purpose.    As heretofore stated, this court has uniformly held that, where a dam is constructed in a navigable stream in aid of navigation, the purpose of its construction is public, and also that the taking of property for the generation of electric power for the purpose of sale is a taking of property for a public purpose.   The mere fact that a dam would not have been constructed were it not for the power generated by it does not argue that the dam will not in fact aid navigation when built, and such a structure may be entirely lawful even though the legislative authorization for its construction be limited to the purpose of aiding navigation.    *Wis. River Imp. Co. v. Pier, supra.*    We think the evidence presented on the hearing fairly shows that the construction of the dam in question will aid the navigation of the river above the location of the dam and will not materially interfere with it at or below such point, and that either of the purposes specified in the act is public, so that the power of eminent domain was legally conferred on the owners of the franchise.

7. The condemnation proceeding was pending in the Sixth judicial circuit.   Owing to the illness of the judge of that circuit the judge of the Eighteenth judicial circuit was called in to hear the petition for the appointment of commissioners and made the order appointing them.   It is urged that under the provisions of secs. 5, 6, and 7, art. VII, of our constitu-

tion a circuit judge cannot exercise any of the powers of his office outside of his own circuit, unless there are other provisions in the constitution authorizing him to do so, and that the only provision found which does authorize such action is sec. 11, art. VII, which empowers judges of the circuit courts to hold court for each other. It is argued that the holding of court within the purview of the section last referred to means holding one of the regular terms of the circuit court, and does not permit the judge of one circuit to make orders at chambers in another circuit.

It is true there is a distinction between holding court and exercising judicial powers out of court. Still we think it is in the interest of the speedy administration of justice and of sound public policy that the words "may hold courts," found in sec. 11, art. VII, be liberally construed. No good reason is apparent why a circuit judge of one circuit should be empowered to hold court in another but should be denied the right to transact other judicial business. Considering the purpose which the framers of the constitution undoubtedly had in view, we conclude that the authority conferred on judges to hold court for each other was meant to include generally the judicial business which a circuit judge is authorized by law to transact. Moreover, the language used is permissive. Circuit judges "may hold courts for each other." We do not think the provision quoted has precluded the legislature from enlarging the powers which circuit judges may exercise outside of their circuits, even if it be conceded that only the power to hold court at a regular term is expressly conferred by the constitution. The legislature has conferred such power by sec. 2432, Stats. (1898).

*By the Court.*—Order affirmed.

KERWIN, J., took no part.